**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| CHRISTOPHER JEFFREY WILLIAMS,<br><br>                      Plaintiff,<br>vs.<br><br>EQUIFAX INFORMATION SERVICES, LLC, TRANS UNION, LLC, CITIBANK, N.A., REGIONS BANK, N.A., and NELNET BUSINESS SOLUTIONS, INC. a/k/a NELNET SERVICING, LLC,<br><br>                      Defendants. | Civil Action No.<br><br>COMPLAINT FOR VIOLATIONS OF THE FAIR CREDIT REPORTING ACT<br><br><br><br><br><br>DEMAND FOR JURY TRIAL |

Christopher Jeffrey Williams ("Plaintiff"), brings this action on an individual basis under the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"), seeking statutory and other damages against defendants Equifax Information Services, LLC ("Equifax"), Trans Union, LLC ("TransUnion"), Citibank, N.A. ("Citi"), Regions Bank, N.A. ("Regions"), and Nelnet Business Solutions, Inc. a/k/a Nelnet Servicing, LLC ("Nelnet"), and alleges, based upon Plaintiff's personal knowledge, the investigation of counsel, and information and belief, as follows:

**NATURE OF THE ACTION**

1. Defendants Equifax and TransUnion (collectively, "CRA Defendants") have been reporting inaccurate information about Plaintiff's consumer background to numerous credit companies and persons, both known and unknown, including inaccurate reporting with respect to accounts issued by Defendants Citi, Regions, and Nelnet (collectively, "Furnisher Defendants").

2. Plaintiff disputed the reporting regarding the Citi, Regions, and Nelnet accounts in writing through the channels established by CRA Defendants for disputing consumer credit information. CRA Defendants, in turn, and as required by statute, notified the Furnisher

Defendants of Plaintiff's dispute.  Yet, despite receiving the dispute, or notice thereof, Defendants willfully continued to report the inaccurate information.

3. Defendants thus violated the express provisions of the FCRA.  Upon receiving a consumer's dispute, CRA Defendants are legally required to: (i) conduct a reasonable investigation or reinvestigation into all the circumstances surrounding the disputes; and (ii) when and if appropriate, following the performance of reasonable investigation, remove any inaccurate information.

4. Moreover, credit reporting agencies are statutorily obligated to notify furnishers of credit information within five days of receiving a customer's dispute.  The furnishers, in turn, are statutorily obligated to conduct an investigation and correct the misleading information as necessary.  It is thus reasonable to infer that Furnisher Defendants both received notice of, yet willfully disregarded, Plaintiff's dispute.

5. CRA Defendants willfully, intentionally, recklessly and negligently failed to meet their obligations in violation of the FCRA, including § 1681e(b), which obligates CRA Defendants to instate and follow reasonable procedures and policies to ensure maximum possible accuracy in consumer background reports.  CRA Defendants willfully, intentionally, recklessly, and negligently violated § 1681i, which required CRA Defendants to perform a reasonable investigation to remove the inaccurate information after receiving Plaintiff's dispute letters.  After receiving notice of Plaintiff's disputes from CRA Defendants, Furnisher Defendants failed to conduct a reasonable investigation regarding Plaintiff's dispute in violation of § 1681s-2(b).

6. Plaintiff brings this action to recover, *inter alia*, statutory damages, pre-judgment and post-judgment interest, and reasonable attorneys' fees and expenses for injuries suffered as a result of Defendants' misconduct.  Defendants' erroneous reporting of inaccurate information in

Plaintiff's consumer background reports continues to affect Plaintiff's credit worthiness and credit score. As a result of Defendants' misconduct, Plaintiff has suffered a decreased credit score, the loss of ability to purchase and benefit from credit, and the mental and emotional pain, anguish, humiliation, and embarrassment of credit denial.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and pursuant to 15 U.S.C. § 1681p, which states that "[a]n action to enforce any liability created under this title may be brought in any appropriate United States district court, without regard to the amount in controversy[.]"

8. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b).

## PARTIES

**Plaintiff**

9. Plaintiff Christopher Jeffrey Williams is a resident of Atlanta, Georgia, and qualifies as a "consumer" as that term is defined under 15 U.S.C. § 1681a(c). Plaintiff is an individual (and not an entity).

**Defendants**

10. Defendant Equifax Information Services, LLC is a consumer reporting agency that regularly conducts business in this judicial district. Defendant Equifax has a principal place of business located at 1550 Peachtree Street, NW, Atlanta, GA 30309, is registered to do business in the State of Georgia, and may be served with process upon Lisa Stockard, its registered agent for service of process at 1550 Peachtree Street NW, Atlanta, GA 30309. Defendant Equifax Information Services, LLC is a subsidiary of Equifax, Inc. Defendant Equifax qualifies as a "consumer reporting agency" under 15 U.S.C. § 1681a(f), as it, by contractual agreement, disbursed Plaintiff's consumer background reports for remuneration to third parties.

11. Defendant Trans Union, LLC is a consumer reporting agency that regularly conducts business in this judicial district. Defendant TransUnion has a principal place of business located at 555 West Adams, Chicago, IL 60661, is registered to do business in the State of Georgia, and may be served with process upon The Prentice Hall Corp. Systems, Inc., its registered agent for service of process at 40 Technology Parkway South, #300, Norcross, GA 30092. Defendant TransUnion qualifies as a "consumer reporting agency" under 15 U.S.C. § 1681a(f), as it, by contractual agreement, disbursed Plaintiff's consumer background reports for remuneration to third parties.

12. Defendant Citibank, N.A. is a subsidiary of Citigroup, Inc. – one of the world's largest financial institutions with its headquarters at 399 Park Avenue New York, New York 10022. Defendant Citi operates, conducts, engages in, and carries on its business the State of Georgia and has an office or agency in this state. Defendant Citi provides commercial and consumer banking products and services, such as checking accounts, savings accounts, certificates of deposit, individual retirement accounts and rollovers, and credit cards. Defendant Citi further offers lending products and investment products and provides business and small business banking products, cash management, treasury management, and merchant services. Defendant Citi issued the Sears card account reported on consumer background reports. Defendant Citi qualifies as a "furnisher" of credit information as that term is used in 15 U.S.C. § 1681s-2(b) and has a principal place of business located at 701 East 60th Street North, Sioux Falls, SD 57104.

13. Defendant Regions Bank, N.A. is a financial institution with its headquarters and principal place of business located at 1900 Fifth Avenue North, Birmingham, Alabama 35203. Defendant Regions operates, conducts, engages in, and carries on its business the State of Georgia and has an office or agency in this state. Defendant Regions provides commercial and consumer

banking products and services, such as checking accounts, savings accounts, certificates of deposit, and individual retirement accounts and rollovers, and credit cards. Defendant Regions further offers lending products and investment products and provides business and small business banking products, cash management, treasury management, and merchant services. Defendant Regions qualifies as a "furnisher" of credit information as that term is used in 15 U.S.C. § 1681s-2(b).

14. Defendant Nelnet Business Solutions, Inc. a/k/a Nelnet Servicing, LLC is a student loan servicing company that provides individual consumers with access to financial products and services, including student loans. Defendant Nelnet has its principal place of business located 121 S. 13th Street, Suite 100, Lincoln, NE 68508, is registered to do business in the State of Georgia, and may be served with process upon C T Corporation System, its registered agent for service of process at 289 S Culver Street, Lawrenceville, GA, 30046. Defendant Nelnet qualifies as a "furnisher" of credit information as that term is used in 15 U.S.C. § 1681s-2(b).

## SUBSTANTIVE ALLEGATIONS

**The FCRA**

15. The FCRA is a federal statute designed to protect consumers from the harmful effects of inaccurate information contained their consumer credit reports. Thus, Congress enshrined the principles of "fair and accurate credit reporting" and the "need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness" in the very first provision of the FCRA, as follows:

> (1) "The banking system is dependent upon fair *and accurate* credit reporting. *Inaccurate credit reports directly impair the efficiency of the banking system*, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system.
>
> (2) An elaborate mechanism has been developed for investigating and evaluating the creditworthiness, credit standing, credit capacity, character, and general reputation of consumers.

(3) Consumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers.

(4) There is a ***need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness***, impartiality, and a respect for the consumer's right to privacy.

15 U.S.C. 1681a (emphasis added).

16. The FCRA mandates CRAs to adhere to the following twin duties: (i) to assure maximum possible accuracy of information when preparing consumer reports by establishing reasonable policies and procedures in order to comport with this minimum reporting standard; and (ii) to reinvestigate the facts and circumstances surrounding consumer disputes and to appropriately and timely correct any inaccuracies, including by quickly notifying the furnisher and any other parties in the distribution chain of the disputed inaccuracies.

17. CRA Defendants compile, maintain, and report information concerning Plaintiff's creditworthiness, credit-standing, credit capacity, character, and general reputation. That information is then made available for use by third parties in credit transactions involving consumers, for employment purposes, the underwriting of insurance for consumers, and even housing. Plaintiff has a legally protected interest in CRA Defendants fulfilling their respective duties under the FCRA, so that the information is reported and maintained fairly, to support maximum levels of confidentiality, accuracy, and relevancy.

18. Furnishers, after receiving notice of a consumer's dispute from a CRA that information was inaccurate, are required to conduct a reasonable investigation regarding the disputed information. When and if appropriate, following the performance of the reasonable investigation, furnishers are obligated to remove any inaccurate information.

**Citi**

19.     Equifax issued consumer background reports concerning Plaintiff that included inaccurate information in connection with two different Citi accounts: (i) a Citicards CBNA account; and (ii) a Sears card account issued by Citi.

20.     Although both accounts had been closed, Defendants Equifax and Citi continued to report that Plaintiff has a scheduled monthly payment due; because the Citi accounts were both closed, the Equifax and Citi should have reported that the scheduled monthly payment amount was $0, as instructed by the Credit Reporting Resource Guide.

21.     Not only was this reporting inaccurate, but it was also materially misleading, as it provided the appearance that the Citi accounts were open, when in fact they were not.  This inaccuracy also misled prospective lenders into believing (albeit incorrectly) that Plaintiff had a monthly payment obligation to Citi, ultimately giving the perception that Plaintiff's overall disposable monthly income was less than it really was.

22.      On October 02, 2019, Plaintiff sent a letter to Equifax disputing the accuracy of the reporting of the Citi accounts, and explaining that the reporting regarding the scheduled monthly payment amount was materially misleading and inaccurate for the reasons described above.

23.     It is reasonable to infer that Equifax notified Citi about Plaintiff's dispute, as it was required by federal statute.  Citi nevertheless failed to conduct a reasonable investigation with respect to the inaccurate monthly payment amounts, and continued to report the incorrect information on Plaintiff's consumer background reports.

24. Had Equifax and Citi performed reasonable investigations they would have determined that the Citi Accounts that have been closed could not have a scheduled monthly payment amount, as such circumstances are inherently contradictory and nonsensical.

**Regions**

25. Equifax issued consumer background reports concerning Plaintiff that included inaccurate information regarding Plaintiff's Regions account.

26. Although the Regions account had been closed, Defendants Equifax and Regions continued to report that Plaintiff has a scheduled monthly payment due. Because the Regions account was closed, the Equifax and Regions should have reported that the scheduled monthly payment amount was $0, as instructed by the Credit Reporting Resource Guide.

27. Not only was this reporting inaccurate, but it was also materially misleading, as it provided the appearance that the Regions account was open, when in fact it was not. This inaccuracy also misled prospective lenders into believing (albeit incorrectly) that Plaintiff had a monthly payment obligation to Regions, ultimately giving the perception that Plaintiff's overall disposable monthly income was less than it really was.

28. On October 02, 2019, Plaintiff sent a letter to Equifax disputing the accuracy of the reporting of the Regions account, and explaining that the reporting regarding the scheduled monthly payment amount was materially misleading and inaccurate for the reasons described above.

29. It is reasonable to infer that Equifax notified Regions about Plaintiff's dispute, as it was required to do by federal statue. Regions nevertheless failed to conduct a reasonable investigation with respect to the inaccurate monthly payment amounts, and continued to report the incorrect information on Plaintiff's consumer background reports.

**Nelnet**

30. TransUnion issued consumer background reports concerning Plaintiff that included inaccurate information regarding the payment status of multiple Nelnet student loan accounts that had been transferred or sold.

31. Although the Nelnet accounts were transferred or sold, and Plaintiff's payment obligation to Nelnet ceased, TransUnion and Nelnet continued to report in the status field of Plaintiff's background report that the Nelnet accounts were "120-149 Days Late."

32. This reporting was inaccurate because the accounts were closed and Nelnet was reporting a $0 balance on those accounts.

33. In addition to being inaccurate, this reporting was materially misleading, as it caused lenders to believe that Plaintiff was seriously delinquent on existing obligations, and thus had diminished creditworthiness. It also misled prospective lenders into believing (albeit inaccurately) that Plaintiff had a monthly payment obligation to Nelnet, ultimately giving the perception that Plaintiff's overall disposable monthly income was less than it really was.

34. On October 11, 2019, Plaintiff sent a letter to TransUnion disputing the accuracy of the reporting of the Nelnet accounts, and explaining that a closed account could not possibly be "120-149 days late."

35. It is reasonable to infer the Equifax and TransUnion CRA Defendants notified Nelnet about Plaintiff's dispute, as required by federal statute. Nelnet nevertheless failed to conduct a reasonable investigation with respect to the inaccurate payment status, and continued to report the inaccurate and materially misleading information on Plaintiff's credit report.

**Plaintiff suffered harm from CRA Defendants' willful, intentional, reckless and/or negligent misconduct**

36. CRA Defendants have been reporting inaccurate information about Plaintiff's consumer background to numerous credit companies and persons, both known and unknown, through the publication of consumer background reports.

37. The inaccurate information includes personal identifying information, as well as the nature of Plaintiff's tradelines/accounts, including, but not limited to, Plaintiff's accounts with Furnisher Defendants. This inaccurate information negatively reflects upon Plaintiff, Plaintiff's credit repayment history, Plaintiff's financial responsibility as a consumer, and Plaintiff's overall credit worthiness.

38. After noticing the inaccuracies reported by CRA Defendants, Plaintiff disputed them in writing through the channels established by CRA Defendants to dispute consumer credit information. Despite being placed on notice of the inaccuracies, CRA Defendants sent Plaintiff correspondence indicating their intent to continue reporting the inaccurate information. The inaccurate information continues to be published in Plaintiff's consumer background reports.

39. After CRA Defendants confirmed in writing that they intended to continue reporting inaccurate information, Plaintiff was denied the extension of further credit on the basis of the inaccurate reporting.

40. Upon information and belief, CRA Defendants contacted Furnisher Defendants and notified them of Plaintiff's disputes. As part of any reasonable or even rudimentary investigation or reinvestigation, CRA Defendants should have then sent all the relevant evidence/facts to Furnisher Defendants and requested an explanation as to the reason the Citi Accounts, the Regions account, and the Nelnet accounts were being reported in an inaccurate manner. CRA Defendants never: (i) contacted Plaintiff to follow up on, verify and/or elicit more specific information about

Plaintiff's disputes; (ii) contacted any third parties that would have relevant information concerning Plaintiff's disputes; (iii) forwarded any relevant information concerning Plaintiff's disputes to Furnisher Defendants; or (iv) requested or obtained any credit applications or other relevant documents from Furnisher Defendants.  CRA Defendants willfully, intentionally, recklessly and negligently failed to take any of these steps subsequent to Plaintiff's disputes, failed to perform any reasonable investigation, and ultimately failed to remove the inaccurate information.

**CRA Defendants failed to maintain adequate policies and procedures**

41. CRA Defendants systematically violated the FCRA by failing to adhere to and maintain reasonable procedures to assure the maximum possible accuracy of the information in the consumer background reports they published.

42. Upon receipt of Plaintiff's dispute, CRA Defendants were legally required to: (i) conduct a reasonable investigation or reinvestigation into all the circumstances surrounding the dispute; and (ii) when and if appropriate, remove any inaccurate information following the performance of the reasonable investigation.

43. CRA Defendants failed to take any of these steps in violation of the FCRA and Plaintiff is entitled to damages.  Plaintiff has suffered actual damages through harm to Plaintiff's consumer background reputation and overall credit score, by missing opportunities, and by being denied the ability to procure additional credit.

## CAUSES OF ACTION

### COUNT I

**Against CRA Defendants for Violations of the FCRA, 15 U.S.C. §§ 1681e and 1681i**

44. Plaintiff incorporates by reference the preceding allegations as though fully set forth herein.

45. The FCRA imposes a duty on credit reporting agencies to devise and implement procedures to assure the "maximum possible accuracy" of credit reports, as follows:

> Whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure ***maximum possible accuracy*** of the information concerning the individual about whom the report relates.

15 U.S.C. §1681e(b).

46. Upon receiving a consumer's dispute, credit bureaus are legally required to conduct an investigation and correct the disputed information contained in the report, as follows:

> . . . if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency ***is disputed by the consumer***, and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, ***the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information***, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.

*Id.* §1681i(a)(1).

47. Credit reporting agencies are further required to provide prompt notice of the consumer's dispute to the furnisher of the disputed information, as follows:

> (A) *In general.* ***Before the expiration of the 5-business-day period*** beginning on the date on which a consumer reporting agency receives notice of a dispute from any consumer or a reseller in accordance with paragraph (1), ***the agency shall provide notification of the dispute to any person who provided any item of information in dispute, at the address and in the manner established with the person***. The notice shall include all relevant information regarding the dispute that the agency has received from the consumer or reseller.

*Id.* §1681i(a)(1) (emphasis added).

48. In violation of §§ 1681e(b) and 1681(i), CRA Defendants failed to follow reasonable procedures to ensure maximum possible accuracy of the information attributable to Plaintiff by reporting inaccurate information in Plaintiff's consumer background report. Plaintiff

disputed the inaccurate information, and still, CRA Defendants willfully, intentionally, recklessly and negligently failed to perform a reasonable investigation to remove the inaccurate information.

49. In violation of § 1681o and § 1681n, CRA Defendants' conduct was a direct and proximate cause of Plaintiff's injury, and it is therefore liable to Plaintiff for their negligent and willful failures to follow reasonable policies and procedures. As a result of CRA Defendants' violations of 15 U.S.C. §§ 1681e(b) and 1681i, Plaintiff suffered statutory and actual damages as described herein and is entitled to recover actual damages and punitive damages, pursuant to 15 U.S.C. §§ 1681n and 1681o.

## COUNT II

**Against Furnisher Defendants for Violation of the FCRA, 15 U.S.C. § 1681s-2(b)**

50. Plaintiff incorporates by reference the preceding allegations as though fully set forth herein.

51. Upon receiving notice of a dispute from a credit reporting agency, furnisher are required to conduct an investigation and correct the misleading information as necessary, as follows:

> After receiving notice pursuant to 15 U.S.C. § 1681i(a)(2) of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall –
>
> (A) *conduct an investigation with respect to disputed information*;
>
> (B) review all relevant information provided by the consumer reporting agency pursuant to § 1681i(a)(2) of this title;
>
> (C) report the results of the investigation to the consumer reporting agency; [and]
>
> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information…

15 U.S.C. § 1681s-2(b) (emphasis added).

52. Furnisher Defendants failed to conduct a timely and reasonable investigation of Plaintiff's dispute after receiving notice from CRA Defendants concerning Plaintiff's dispute. Furnisher Defendants further willfully, intentionally, recklessly, and/or negligently continued to report such inaccurate information to CRA Defendants.

53. Instead of removing the inaccurate information, Furnisher Defendants improperly confirmed the inaccurate information that it had been reporting.

54. Furnisher Defendants' conduct was a direct and proximate cause in causing the damages suffered by Plaintiff. As a result of Furnisher Defendants' misconduct, Plaintiff has suffered actual damages in the form of lost credit opportunities, harm to credit reputation and credit score, and emotional distress.

55. As a result of Furnisher Defendants' misconduct, Plaintiff is entitled to statutory, actual, and punitive damages pursuant to 15 U.S.C. §§ 1681n and 1681o.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands a judgment:

A. awarding Plaintiff statutory money damages, actual damages and punitive damages, including pre-judgment and post-judgment interest;

B. awarding attorneys' fees and costs, and other relief; and

C. awarding such other relief as to this Court may seem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED: March 7, 2020

**THE OAKS FIRM**

*/s/ Misty Oaks Paxton, Esq.*
Misty Oaks Paxton, Esq.
attyoaks@yahoo.com
3895 Brookgreen Point
Decatur, Georgia 30034
Tel: (404) 725-5697

*Attorneys for Plaintiff*

**COHEN & MIZRAHI LLP**
EDWARD Y. KROUB
MOSHE O. BOROOSAN (*pro hac vice forthcoming*)
300 Cadman Plaza West, 12th Floor
Brooklyn, NY  11201
Telephone:  929/575-4175
929/575-4195 (fax)
edward@cml.legal
moshe@cml.legal

*Attorneys for Plaintiff*