**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| **CHRISTOPHER JEFFREY WILLIAMS,** **Plaintiff,** v. **NELNET BUSINESS SOLUTIONS, INC. a/k/a Nelnet Servicing, LLC,** **Defendant.** | **CIVIL ACTION NO. 1:20-CV-1063-LMM-CCB** |

## FINAL REPORT AND RECOMMENDATION

Plaintiff Christopher Jeffrey Williams brings this action against Defendant Nelnet Business Solutions, Inc. a/k/a Nelnet Servicing, LLC (Nelnet) alleging violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* (FCRA).[1] The complaint alleges that Nelnet willfully and negligently failed to conduct a reasonable investigation of Plaintiff's credit dispute as required by 15 U.S.C. § 1681s-2(b). (Doc. 1 at ¶¶ 50–55). This action is before the Court for consideration

---

[1] Plaintiff originally brought this action against other defendants as well, including Equifax Information Services, LLC; Trans Union, LLC; Citibank, N.A.; and Regions Bank, N.A. All other defendants have been dismissed and Nelnet is the only remaining defendant. As such, Trans Union's motion to dismiss, (Doc. 13), should be **DENIED AS MOOT**.

of Nelnet's motion to dismiss. (Doc. 31). Plaintiff has filed a response to the motion, (Doc. 36), and Nelnet has replied, (Doc. 37). For the reasons discussed below, the undersigned **RECOMMENDS** that the motion to dismiss, (Doc. 31), be **GRANTED.**

## I. BACKGROUND

Plaintiff filed his complaint on March 7, 2020. (Doc. 1). The following facts, which are deemed true for purposes of a motion to dismiss, *see Powell v. Thomas*, 643 F.3d 1300, 1302 (11th Cir. 2011), are drawn from Plaintiff's complaint.

Nelnet previously serviced a number of Plaintiff's student loan accounts. (*See* Doc. 1 at ¶¶ 14, 30). All of these accounts were eventually sold or transferred, such that Plaintiff had no further payment obligation to Nelnet. *See id.* at ¶¶ 30–31. After these accounts were sold or transferred, Nelnet has reported to credit reporting agencies that the accounts had a $0 balance, but it has also included a notation "in the status field of Plaintiff's background report" that the accounts were 120–149 days late. *See id.* at ¶¶ 31–32. Plaintiff claims that this caused lenders to believe that Plaintiff was seriously delinquent on existing loan obligations and that Plaintiff had a monthly payment obligation to Nelnet. *Id.* at ¶ 33.

On October 11, 2019, Plaintiff sent a letter to Trans Union, a credit reporting agency, disputing the accuracy of the reporting of the Nelnet accounts, explaining

2

that a closed account could not possibly be 120–149 days late. *Id*. at ¶ 34. Plaintiff alleges that it is reasonable to infer that Trans Union notified Nelnet about this dispute, but Nelnet did not change the way it was reporting the information regarding Plaintiff's account. *Id*. at ¶ 35.

## II.    STANDARD ON A MOTION TO DISMISS

The Federal Rules of Civil Procedure require a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While a plaintiff need not include "detailed factual allegations" in the complaint, the requirement to demonstrate the grounds for relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In other words, Rule 8 requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Instead, to survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

These standards suggest a two-pronged approach for courts evaluating a motion to dismiss a complaint. *See id.* at 678–79; *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010). First, "eliminate any allegations in the complaint that are merely legal conclusions." *Am. Dental Ass'n*, 605 F.3d at 1290. While a court must accept the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff, *Powell*, 643 F.3d at 1302, it need not consider "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," *Iqbal*, 556 U.S. at 678. Nor should it consider "a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Second, "where there are well-pleaded factual allegations, assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Am. Dental Ass'n*, 605 F.3d at 1290 (internal quotation marks omitted).

## III. DISCUSSION

Nelnet asserts two arguments for why the complaint should be dismissed: (1) its reporting of Plaintiff's accounts was accurate and therefore cannot be misleading as a matter of law, (Doc. 31 at 6–11), and (2) Plaintiff has failed to identify the real party in interest, *id.* at 11–12.

### A. Was the Reporting of Plaintiff's Account Accurate?

Nelnet argues that Plaintiff has not alleged "the threshold showing that Nelnet's reporting was inaccurate or incomplete." (Doc. 31 at 9). Nelnet notes that Plaintiff does not allege that his payments were current, but rather that "the lateness of the payments should no longer appear on the closed account." *Id.* Nelnet cites numerous cases, including *Parker v. 1st Franklin Fin. Corp., et al.*, No. 1:19-cv-1897-TCB-JKL, ECF Doc. 42 (N.D. Ga. Jan. 10, 2020), *adopted by* ECF Doc. 44 (N.D. Ga. Jan. 28, 2020), for its holding that "historical payment terms on an account that has been charged off with a zero balance is not inaccurate or misleading." (Doc. 31 at 9 (citing *Parker*, Doc. 42 at 9)). In response, Plaintiff argues that Nelnet's report is misleading when it states that the payment status for the accounts was "120-149 days late" because it implies a current debt obligation. (Doc. 36 at 5–6). Plaintiff emphasizes that the "payment status field is used to report the ***current*** status of the account" and that therefore the inclusion of a late notation in the payment status field implies a current obligation to pay. *Id.* (emphasis in original). Plaintiff distinguishes *Parker* by arguing that his complaint, in contrast to the one in *Parker*, "explicitly alleged that Nelnet's inaccurate reporting of the student loan accounts as 120–149 days late conveyed to prospective lenders that Plaintiff still had existing obligations on [his] student loan

payments and that Plaintiff was *currently* delinquent on such obligations." (Doc. 36 at 11) (emphasis in original). In reply, Nelnet argues that Plaintiff's attempt to distinguish *Parker* does not change the overall conclusion that reporting historical payment terms is not misleading when the tradeline also reflects that the account is closed and has a zero balance.

"The FCRA requires CRAs [credit reporting agencies] and entities that furnish information to CRAs ('furnishers' or 'furnishers of information') to investigate disputed information." *Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295, 1301 (11th Cir. 2016). When a consumer disputes information on the consumer's credit report, the CRA is required to investigate "to determine whether the disputed information is inaccurate." 15 U.S.C. § 1681i(a)(1)(A). The CRA is required to notify the furnisher of the dispute, as well as provide any information regarding the dispute that the CRA received from the consumer. 15 U.S.C. § 1681i(a)(2)(A). "Upon receipt of this notice, the furnisher of information must: (1) conduct an investigation with respect to the disputed information; (2) review all relevant information provided by the CRA in connection with the dispute; and (3) report the results of the investigation to the CRA." *Hinkle*, 827 F.3d at 1301 (internal quotation marks and alterations omitted); *see also* 15 U.S.C. 1681s-2(b)(1).

"Should the investigation determine that the disputed information is inaccurate or incomplete or cannot be verified, the furnisher must as appropriate, based on the results of the reinvestigation promptly modify, delete or permanently block the reporting of that information to CRAs." *Hinkle*, 827 F.3d at 1301 (internal quotation marks, alterations, and omissions omitted); *see also* 15 U.S.C. § 1681s-2(b)(1)(E).

"Consumers have no private right of action against furnishers for reporting inaccurate information to CRAs regarding consumer accounts." *Felts v. Wells Fargo Bank, N.A.*, 893 F.3d 1305, 1312 (11th Cir. 2018); *see* 15 U.S.C. § 1681s-2(c). "Instead, the only private right of action consumers have against furnishers is for a violation of § 1681s–2(b), which requires furnishers to conduct an investigation following notice of a dispute." *Felts*, 893 F.3d at 1312. And a plaintiff cannot prevail on a claim under section 1681s-2(b)—that the furnisher failed to conduct a reasonable investigation—without first showing that the information a furnisher reported was inaccurate or incomplete. *See id.* at 1313. This is so because "a plaintiff cannot demonstrate that a reasonable investigation would have resulted in the furnisher concluding that the information was inaccurate or incomplete without identifying some facts the furnisher could have uncovered that establish that the reported information was, in fact, inaccurate or incomplete." *Id.*

7

"The FCRA does not define the term accurate." *Foster v. Santander Consumer USA, Inc.*, No. 1:18-CV-4146-JPB-JFK, 2019 WL 8277273, at *6 (N.D. Ga. Dec. 17. 2019) (internal quotation marks and alteration omitted).[2] "Courts applying § 1681s-2(b) in furnisher actions have looked to suits brought under § 1681e(b) against CRAs to construe the meaning of accuracy." *Id.* And in *Pedro v. Equifax, Inc.*, a case concerning § 1681e(b), which requires CRAs to strive for "maximum possible accuracy," the Eleventh Circuit opined that the best reading of that term requires the credit report to be both technically accurate *and* not misleading or incomplete (as opposed to just technically accurate). 868 F.3d 1275, 1281 (11th Cir. 2017); *see also Williams v. Capital One Bank (USA) N.A.*, 785 F. App'x 741, 747 (11th Cir. 2019) ("This Court has not yet determined whether the Act requires only technical accuracy, or whether—as the requirement for "maximum possible accuracy" at least implies—a CRA may be liable if it reported factually correct information that could also be interpreted as being misleading or incomplete." (internal quotation marks omitted)). Both parties use the broader "and not

---

[2] The docket reflects that this case settled before the District Judge had an opportunity to consider the cited Report and Recommendation.

misleading" definition of inaccuracy, and the Court does as well. (Doc. 31 at 6; Doc. 36 at 4–5).

Here, the complaint does not state a claim for a violation of 15 U.S.C. § 1681s-2(b) because it does not allege facts from which a reasonable inference can be drawn that Nelnet's reporting was inaccurate. Critically, the accounts were closed and Nelnet reported that they had a $0 balance. (Doc. 1 at ¶ 32). And courts within this circuit have held "that—in the face of accurate information showing an account was closed with no balance owed—the mere inclusion of information about previous payment terms neither causes confusion nor creates an inaccuracy so as to maintain a claim under the FCRA." *Baker v. Pinnacle Credit Union*, No. 19-cv-3455, 2020 WL 4696713, at *4 (N.D. Ga. Aug. 13, 2020) (collecting cases). As such, the fact that Nelnet reported historical payment data (that the payments were 120-149 days late) could not create confusion or an inaccuracy because Nelnet also reported the accounts closed with a $0 balance. The parties discuss *Parker*—where the court held that reporting historical payment terms for an account that had been charged off with no balance owing was not, as a matter of law, inaccurate (No. 19-CV-1897, Doc. 42 at 10)—but there are many other cases with similar facts and holdings. *See, e.g.*, *Seay v. Trans Union, LLC*, No. 7:18-CV-204 (HL), 2019 WL

9

4773827, at *4–5 (M.D. Ga. Sept. 30, 2019) (granting summary judgment where the report listed a monthly payment amount but clearly showed the account was closed with a zero balance); *Gibson v. Equifax Info. Servs., LLC*, No. 5:18-cv-00465-TES, 2019 WL 4731957, at *4 (M.D. Ga. July 2, 2019) (dismissing claims where the tradeline showed a monthly payment amount but also showed that the account was closed with a $0 balance); *Meeks v. Equifax Info. Servs., LLC*, No. 1:18-CV-03666-TWT-WEJ, 2019 WL 1856411, at *7 (N.D. Ga. Mar. 4, 2019) (dismissing complaint where the report made clear that the account was closed with a $0 balance while also displaying a monthly payment amount of $613 and holding that "it is not plausible that the existence on the credit disclosure of plaintiff's former monthly payment obligation could materially mislead a prospective lender about the nature of his current obligations"), *adopted by* 2019 WL 1856412 (N.D. Ga. Apr. 23, 2019); *see also Foster*, 2019 WL 8277273, at *7 ("[O]ther courts have found that a zero balance may cure inaccuracies such as the reporting of a scheduled monthly payment on a charged off debt.").

The undersigned finds persuasive this analysis from *Baker*, explaining why including information about payment history is not misleading, in the context of an account reported as closed with a zero balance:

> [T]he Court concludes no reasonable juror could find the information about Plaintiff's former monthly payment somehow renders inaccurate or confusing the other information Pinnacle provided. No reasonable juror could conclude the information suggests Plaintiff currently has a monthly payment obligation or could otherwise materially mislead a prospective lender about the nature of her financial obligations …. [Plaintiff's] insistence that Pinnacle should have included a payment schedule of $0 in order to make her report more accurate is unavailing. Pinnacle was not required to provide information in the manner most favorable to Plaintiff and fulfilled its duty by providing objectively accurate information.

2020 WL 4696713, at *4. The furnisher in *Baker* reported the consumer's account as closed with no balance owed. *Id*. at *3. That was enough, even in the face of simultaneous reporting of a "scheduled payment of $94.00," to make it so that "[a]nyone reading the report would understand [the consumer] owed nothing." *Id*. The Court sees no relevant difference here. Although *Baker* and the other cases cited above deal with a monthly payment amount, and this case involves the reporting of a late monthly payment, the reporting of a zero balance is the same in all. And it is that zero balance on a closed account that would convey to anyone reading the report that Plaintiff owed nothing.

Plaintiff emphasizes the fact that the information about his account being over 120 days late is found in the "Pay Status" field of his credit report, suggesting a current delinquency. (Doc. 36 at 11; *see also* Doc. 1 at ¶¶ 30–33). But Plaintiff offers no explanation as to the significance of the "Pay Status" field, nor does he suggest

11

how someone could plausibly read a report listing a zero balance for a closed account to mean that he currently has a late payment that remains due. Plaintiff cites *Macik v. JPMorgan Chase Bank, N.A.*, No. G-14-044, 2015 WL 12999728, at *3–4 (S.D. Tex. May 28, 2015), *adopted by* 2015 WL 12999727 (S.D. Tex. July 31, 2015), which discussed the significance of late payment information appearing in "Account Status" and "Payment Rating" fields on a credit report. But the court interpreted these fields with the assistance of the furnisher's internal guidelines for reporting, which were submitted as evidence on a motion to dismiss that the court converted to one for summary judgment. *Id.* The court held that a jury could find that the furnisher's reporting of late payment information on an account with no balance misleading in part because the furnisher's reporting conflicted with its own internal guidelines. *Id.* Here, even if the Court viewed the "Account Status" and "Payment Rating" fields as equivalent to the "Pay Status" field, there is no allegation in the complaint that Nelnet's investigation was inconsistent with its own internal procedures. Additionally, it is not clear that *Macik* turned on the question of the accuracy of the information, as opposed to the reasonableness of the furnisher's investigation. The arguments presented here turn on the threshold matter of the accuracy of the furnished information (an analysis required by *Felts*),

which is an issue not considered by the Southern District of Texas in *Macik*. *See* 2015 WL 12999728, at *3. In short, the undersigned is not persuaded that anything in *Macik* undermines the relevancy of the within-circuit cases cited above.

Plaintiff also cites *Mund v. Transunion*, No. 18-cv-6761(BMC), 2019 WL 955033 (E.D.N.Y. Feb. 27, 2019), and *Friedman v. CitiMortgage, Inc.*, No. 18 CV 11173 (VB), 2019 WL 4194350 (S.D.N.Y. Sept. 3, 2019), both of which involve facts similar to those in this case and where the court denied motions to dismiss. In *Friedman*, the credit report stated that the plaintiff's account had a $0 balance, that the balance was 120 days late, and that the plaintiff owed $360 per month. 2019 WL 4194350, at *3. Although the court's analysis is sparse, it seems to have accepted the plaintiff's argument that someone could have been misled into believing that the plaintiff was currently delinquent on a $0 balance because there was a notation that the payment was 120 days late. *Id.*[3] For the reasons laid out in *Baker* and the other cases from within the Eleventh Circuit cited above, the undersigned finds more persuasive the holdings from those cases that it is not reasonable to infer that

---

[3] *Mund* is, in all relevant ways, similar.

13

historical payment information in a credit report is inaccurate or misleading when the report shows that the account is closed with no balance owed.[4]

### B. The Real Party in Interest Under Rule 17(a)

Nelnet also argues that the complaint should be dismissed under Rule 17(a) because Plaintiff has failed to identify the real party in interest. (Doc. 31 at 11–12). Nelnet asserts that the current identification of the defendant as "Nelnet Business Solutions, Inc. a/k/a Nelnet Servicing, LLC" is incorrect because that particular named defendant "is not a legal entity in the State of Georgia." *Id.* at 12. In

---

[4] Neither party has attached a copy of the credit report, which the Court likely could have considered in evaluating a motion to dismiss—even without converting the motion to one for summary judgment—given that Plaintiff references it throughout the complaint (the Court recognizes that Nelnet may not yet have a copy of the report). Trans Union included the relevant portion of the credit report in a reply brief in support of its motion to dismiss. (Doc. 19 at 6). Nelnet directs the Court to Trans Union's filing in its own reply brief, (Doc. 37 at 3), but the Court is hesitant to rely too much on the report, given that it was first raised in a reply brief, to which Plaintiff has not had an opportunity to respond. The report makes clear that the 120-day delinquency occurred during two distinct time periods, which is contrary to Plaintiff's suggestion that the report might lead someone to believe that there is a current delinquency. If the Court did consider the various information set forth in the actual credit report, that information would make clear that this case is virtually indistinguishable from *Settles v. Trans Union, LLC*, No. 3:20-cv-84, 2020 WL 6900302 (M.D. Tenn. Nov. 24, 2020), where the court granted a motion to dismiss and held that a report detailing a closed student loan with a $0 balance that was transferred to another lender was not misleading, even though it reported a 120-day delinquency during two distinct periods. *Id.* at *4–5.

14

response, Plaintiff asserts that Nelnet admits that "Nelnet Servicing, LLC" is the proper party in this action and that his alternative styling is not improper. (Doc. 36 at 11–13). Plaintiff requests leave to amend his complaint to name "Nelnet Servicing, LLC" as the defendant if the Court deems it necessary. *Id.* at 13. Nelnet does not argue this point further in reply.

The complaint should not be dismissed under Rule 17(a), which deals specifically with the *prosecution* of a case in the name of the real party in interest, and not the defense of a case. *See* Fed. R. Civ. P. 17(a)(1). Nelnet has not provided any legal authority for dismissing a case for failure to name the proper defendant (as opposed to the proper plaintiff) under Rule 17, nor has the Court's research found any. In fact, the case law is to the contrary. *See, e.g., Hughes v. Auto-Owners Ins. Co.*, No. 4:11-CV-979 CAS, 2011 WL 2601519, at *3 (E.D. Mo. June 30, 2011) ("Rule 17's focus is on parties asserting claims in an action. Rule 17 has no application where a defendant has been misnamed, and the rule's substitution provision cannot be used here to correct the claimed defect in the plaintiff's complaint."). There is no basis to dismiss the complaint under Rule 17 for the alleged misnaming of Defendant.[5]

---

[5] If the District Judge disagrees with the undersigned's recommendation

## IV. CONCLUSION

For the reasons stated above, **IT IS RECOMMENDED** that Trans Union's motion to dismiss, (Doc. 13), be **DENIED AS MOOT**, that Nelnet's motion to dismiss, (Doc. 31), be **GRANTED**, and that Plaintiff's complaint be **DISMISSED**. There is nothing further pending in this matter and the Clerk is **DIRECTED** to terminate the refence to the undersigned.

**IT IS SO RECOMMENDED,** this 14th day of January, 2021.

_____
CHRISTOPHER C. BLY
UNITED STATES MAGISTRATE JUDGE

---

regarding the merits under the FCRA and denies the motion to dismiss, Plaintiff could seek leave to amend the complaint under Federal Rule of Civil Procedure 15 to correctly name the defendant. *See generally Pears v. Mobile Cnty.*, 645 F. Supp. 2d 1062, 1081–88 (S.D. Ala. 2009) (discussing the "misnomer rule" and the correction of a defendant's name under Rule 15).